**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**DONTE D. HENDRICKS,**<br>Defendant. | **CASE NO. 7:25-cr-15-KKC-EBA-1**<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on motion filed by Defendant Donte Hendricks. (R. 26.) Hendricks moves to suppress all evidence seized from his car after a warrantless search. He argues that Pikeville Police Department officers stopped him without the required probable cause or reasonable suspicion, conducted a dog stiff on the car without reasonable suspicion, and then illegally searched his car without a warrant.

"The government has the burden of proving the legality of a warrantless search." *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (citing *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002)).

**I. BACKGROUND**

On February 25, 2025, a confidential informant told Pikeville Police Detective Zachary Bowens that a person under the alias "BGE" was selling large amounts of fentanyl and importing it from West Virginia. (R. 28-1 at 5.) The confidential informant was "tested and credible." (*Id*.) BGE was identified as Hendricks. (*Id*.)

The confidential informant told Detective Bowens that Hendricks planned to transport three ounces of fentanyl to Debra Smith aka "Lynn Ferguson" on February 26, 2025. (*Id.*) The confidential informant provided a description of Hendricks, his car, and his arrival time and location, as well as screenshots of his Facebook page, which included pictures of Hendricks. (*Id.*) The confidential informant described Hendricks as a black male with a large build and approximately 6'0" tall. According to the confidential informant, Hendricks' car was a dark blue Ford passenger car, and he would be delivering the fentanyl to 601 Ratliff Creek Road. (*Id.*) The confidential informant stated that Hendricks would be the only individual at the residence. (*Id.*) Finally, the confidential informant stated that Hendricks was known to carry a gun and was believed to be dangerous. (*Id.*) Officers were briefed on the situation and were instructed to detain Hendricks. (*Id.*)

At approximately 8:32 PM on February 26, 2025, officers arrived at the scene. (*Id.*) Detective Bowens observed the vehicle described by the confidential informant leaving 601 Ratliff Creek Road. (*Id.*) Specifically, he observed a black 2011 Ford Taurus four-door passenger car. (*Id.* at 6.) The vehicle was registered to Donte Hendricks through West Virginia. (*Id.*)

Because of the car's position on the road, Detective Bowens could see the operator of the car. (*Id.* at 5.) Detective Bowens believed the driver matched the physical description and pictures from the Facebook account provided by the confidential informant. (*Id.*)

Detective Bowens turned on his emergency lights and conducted a stop on the vehicle "based off the probable cause developed from the totality of the circumstances and correlating information provided by the confidential witness." (*Id.*) Because of his concern that Hendricks was carrying a pistol, Detective Bowens conducted a "felony stop" on Hendricks. (*Id.* at 6.)

Detective Bowens drew his service pistol, kept it in a "low ready position," and gave loud verbal instructions for the operator to exit the vehicle through several small movements. (*Id.*) Then, Hendricks was detained and given the *Miranda* warning. (*Id.*) While detained, Hendricks was observed wearing a gold and white chain necklace with the letters "BGE." (*Id.*) Officers contacted K-9 Deputy Allen May with the Floyd County Sheriff for a dog sniff. (*Id.*)

At 8:52 PM, K-9 "Bear" alerted to the odor of a controlled substance near the driver's-side passenger door. (*Id.*) The officers observed a large bag of opened dog food in the backseat. (*Id.*) Officer Patrick Coleman cut the bag of dog food with a knife and observed an off-white bag filled with a powdery substance suspected to be fentanyl. (*Id.*) When K-9 Bear was brought back to the bag, he alerted to the odor of a controlled substance again. (*Id.*)

The officers seized four ounces of fentanyl and located a suspected cutting agent for fentanyl on Hendricks' person. (*Id.*) Additionally, the officers seized Hendricks' car, cell phone, and money uncovered during the search of his vehicle and person. (*Id.*) They did not find any guns. (*Id.*)

## II. ANALYSIS

Hendricks moves the Court to grant his motion to suppress all the items seized during the February 26, 2025 stop. (R. 26.) The court will consider whether (1) the officers stopped the car with reasonable suspicion of criminal activity; (2) the officers had reasonable suspicion of criminal activity at the time a K-9 unit was called; and (3) the officers had probable cause to search the vehicle.

Officers "typically need reasonable suspicion to initiate a traffic stop." *United States v. Jordan*, 100 F.4th 714, 718 (6th Cir. 2024) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). "Reasonable suspicion exists when an officer has 'specific and articulable facts' that provide an 'objective basis for suspecting legal wrongdoing.'" *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). This is a "fact-bound, "common sense" inquiry. *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996); *United States v. Johnson*, 482 F. App'x 137, 147-48 (6th Cir. 2012)). Three guideposts for reasonable suspicion analysis are as follows.

1. Otherwise innocent activity can form the basis for reasonable suspicion.

2. When assessing whether reasonable suspicion exists, courts must consider the relevant facts collectively.

3. Law enforcement may rely on criminal "profiles" when choosing to make or extend an investigative stop.

*Id.* at 719 (internal citations omitted). Overall, reasonable suspicion "requires only that the officer have 'a moderate chance' of finding evidence of illegality on further

4

investigation." *United States v. Williams*, 68 F4th 304, 308 (6th Cir. 2023) (internal citation omitted).

When an informant's tip contributes to reasonable suspicion, "the weight to which that tip is entitled falls along a broad spectrum." *United States v. Williams*, 483 F.App'x 21, 25 (6th Cir. 2012). Tips from anonymous informants are generally entitled to little weight, whereas tips from known or reliable informants are generally entitled to more weight. *Id*. "Tips that provide specific details or predictions of future action fall higher on the reliability scale because they suggest the existence of knowledge to which the public might not have access." *Id*.

1. The Stop

"The stop of a vehicle qualifies as the 'seizure' of a 'person' that must be 'reasonable' under the Fourth Amendment." *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021) (citing *Wren v. United States*, 517 U.S. 806, 809-10 (1996)). "Police typically need reasonable suspicion to initiate a traffic stop." *United States v. Jordan*, 100 F.4th 714, 718 (6th Cir. 2024) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

Here, Detective Bowens made the stop following a tip from a confidential informant. The confidential informant was known to police and previously provided reliable and accurate information to the officers. (R. 28 at 8.) Additionally, the confidential informant provided specific details about Hendricks and his activities. Hendricks matched the physical description and was at the exact address provided by the confidential informant. Likewise, the car Hendricks drove was a Ford

passenger car, as described by the confidential informant. While the confidential informant described the color of the car as dark blue when it is actually black, the two colors are close enough in hue that the reliability of the tip remains intact. The reliability might have changed if the confidential informant said the car would be red, or even light blue, but one could easily mistake a black car for one that is dark blue.

The information provided by the confidential informant gave specific predictions of future action, namely that Hendricks was at a specific location, in a particular vehicle, and on a specific day to deliver fentanyl. When the officers followed the tip, they found a similar vehicle occupied by an individual who looked like Hendricks. Accordingly, the Court finds that Detective Bowens had reasonable suspicion that Hendricks was engaging in drug trafficking to make the stop.

## 2. The Dog Sniff

Police cannot extend an otherwise-completed traffic stop to conduct a dog sniff without reasonable suspicion of criminal activity. *Rodriguez v. United States*, 575 U.S. 348, 355-56 (2015). When officers have a reasonable suspicion of drug trafficking, the Sixth Circuit has found that a stop lasting at least forty-three minutes "is a reasonable period of time to allow police to contact a canine unit, wait for its arrival, and have a dog check for the presence of narcotics." *United States . Johnson*, 267 Fed. Appx. 412, 415 (6th Cir. 2008) (citing *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)); *see also United States v. Corman*, No. 23-37-DLB-CJS-1, 2024 WL 4428814, at *8 (E.D. Ky. Aug. 30, 2024), report and recommendation adopted, No. 23-37-DLB-CJS-1, 2024 WL 44245668 (E.D. Ky. Oct. 4, 2024) ("Regardless of the haste

of the officers here, since they had reasonably articulable suspicion that Corman was drug trafficking, Sixth Circuit caselaw allows for a delay of at least up to 45 minutes to investigate.").

Here, reasonable suspicion of criminal activity was present to permit extending the stop to conduct a dog sniff. While officers did not observe guns or drugs in plain view, Detective Bowens observed additional information during the stop which continued to support the reliability of the confidential informant's tip and the presence of reasonable suspicion of criminal activity. Once Hendricks was pulled over, Detective Bowens observed that Hendricks was wearing a necklace displaying the letters "BGE." (R. 28-1 at 6.) This supported the confidential informant's assertion that Hendricks was a drug dealer known as "BGE." Combined with the other details provided by the confidential informant and confirmed by the officers, Detective Bowens had reasonable suspicion to conduct a dog sniff.

Further, the duration of the stop was sufficiently limited to the amount of time necessary for Detective Bowens to assess whether Hendricks possessed drugs. Detective Bowens contacted the K-9 unit after Hendricks was detained and observed wearing the "BGE" chain necklace. The stop began as early as 8:32 PM, when Detective Bowens observed Hendricks' vehicle leaving 601 Ratliff Creek Road. The dog sniff occurred as late as 8:52 PM, when K-9 Bear alerted to the presence of a controlled substance near the driver's-side passenger door. Consequently, Hendricks was detained for no more than twenty minutes while waiting for the dog sniff. This is well-within the reasonable time for officers to "contact a canine unit, wait for its

arrival, and have a dog check for the presence of narcotics." *United States v. Johnson*, 267 Fed. Appx. 412, 415 (6th Cir. 2008) (finding a forty-three minute detention after the initial stop a reasonable period); *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (finding a thirty to forty-five minute detention after the initial stop a reasonable period). Accordingly, the Court finds that the stop was reasonably extended to allow a dog sniff of Hendricks' car.

### 3. The Search

An alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle. *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012). Hendricks does not contest K-9 Bear's reliability, so the Court will not address it here. Accordingly, K-9 Bear's alert on Hendricks' car established probable cause for Detective Bowens to search the car.

### III. Conclusion

For the aforementioned reasons, the Court hereby **ORDERS** that Hendricks' motion to suppress (R. 26) is **DENIED**.

This 19th day of December 2025.

Signed By:
*Karen K. Caldwell*  KKC
United States District Judge